Before the First Division, October 17, 1957

No. 61284.—Air Clearance Association, Inc. v. United States, petition 7184–R (New York).

Oliver, Chief Judge: This petition, filed under the provisions of section 489 of the Tariff Act of 1930, seeks the remission of additional duties imposed by reason of the appraised values exceeding the entered values of certain silk, cotton, and rayon wearing apparel, exported from Brussels, Belgium, and entered at the port of New York. Twenty-one entries are involved herein. So far as the petition relates to entry 968497, it is untimely and, therefore, is dismissed as to that entry.

The record consists of the importer's testimony, which was taken under a commission issued out of this court, and the oral testimony of the president of the petitioner corporation, the customhouse broker that entered the merchandise in question. The combined testimony of the two witnesses supports the following summation.

Before entering the merchandise in question, the importer made an investigation into the foreign market and the domestic market with the view of ascertaining the value of the goods covered by all of the entries under consideration. Failing to obtain such information, he turned over to his customhouse broker all of the official papers relating to these shipments, with instructions to submit each invoice to the appraiser and request information concerning the value of the merchandise, and also to call "special attention to any new item on the invoice so that it could be checked with the Appraiser as to its proper value." The customhouse broker, upon receipt of these invoices and entries from the importer, checked with other importers "who handled this same type of merchandise" and learned that the invoice prices for the merchandise in question "were pretty well in line" with values shown on invoices of other importers. Prior to entry of the goods in question, the customhouse broker had several conferences with the customs examiner at the airport—these are all airport entries—seeking advice as to proper values for the merchandise and offering to cooperate in every way toward reaching "some point of agreement as to how these entries should be made."

The president of the petitioner corporation, who made the entries in question, testified that throughout the period when these shipments arrived—beginning February 1951, up to and including March 1952—it had been the general practice between customs officials at the airport and brokers making entries—

* * * that because of the rush involved in handling air shipments no shipment would be held up merely because an examiner didn't know all the answers regarding value or classification. And so the effect of it was, and we all agreed to it, let these things go and we'll worry about the appraisement afterward. If there is anything wrong we will let you amend. And as a matter of fact it worked out so well that what would happen is that an appraiser would call us on the telephone or walk into our office, since we were all close together, and say no, you had better amend this either downward or upward. And we did amend. * * *

That procedure was not followed, with respect to the entries under consideration. Instead, the entered values were advanced without giving the importer an opportunity to amend. The witness' testimony concerning the shipments in question is as follows:

Q. Did you submit copies of the invoices and all the information you had to the examiner at the airport prior to making the entries covered by the petition herein?—A. Yes, sir, without exception we submitted every entry before making an entry.

Q. Were you given an opportunity to amend the entries covered by the petition at bar?—A. No; we were given no opportunity. We were not told at any time that the invoices were going to be advanced in value, nor did we know that they were actually advanced until the collector's office advised us that they had been advanced.

Q. Did you find this to be an exception rather than the practice?—A. I found that that was the only time in the history of airport entries that this was done, up to the time that it was done. I don't know what's happened since then.

Following the appraiser's advances in values over the importer's entered values, appeals for reappraisement were filed, but they were ultimately abandoned, because the importer could obtain no information by correspondence and it was impossible because of his physical disability, "medically called lateral sclerosis," to get information "first hand" in the foreign market.

Petitioner's burden in this case, as in all cases arising under section 489, *supra*, was stated by the appellate court in *United States* v. *W. J. Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507, as follows:

When the here involved statute is dissected it is found that the person seeking remission must prove that the act of undervaluation was without any intent (a) to defraud the revenue of the United States; (b) to conceal or misrepresent the facts of the case; (c) to deceive the appraiser as to the value of the merchandise. Each of these three elements must be established by "satisfactory evidence."

It is incumbent upon petitioner to show that, in undervaluing the merchandise, it acted in entire good faith, that no facts or circumstances were known to it which would cause a prudent and reasonable person to question the correctness of the values stated on entry, and that a full disclosure was made to customs officials of all material facts within petitioner's knowledge concerning the value of the merchandise. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *Intra-Mar Transport Corp., Formerly Gondrand Transport Corp.* v. *United States*, 42 C. C. P. A. (Customs) 94, C. A. D. 578. Petitioners are not the insurers of the correctness of the value of the merchandise, nor need they positively know its value. *P. Pastene & Co. (Inc.)* v. *United States*, 21 C. C. P. A. (Customs) 69, T. D. 46392.

On the basis of the record herein, petitioner is entitled to the relief that it seeks. The uncontradicted testimony shows that both the importer and the customhouse broker made a very diligent effort to enter the merchandise at the proper values, first, by contacting other importers and checking foreign market condi-

tions, and then through several conferences with the appraising officials at the airport where these entries were made. Furthermore, the record is sufficiently clear to say that the customhouse broker had ample reason to expect, in the light of the usual practice prevailing between customs officials at the airport and brokers during the period involved herein, that an opportunity would be given to amend the entries in question to meet the prices adopted by the appraiser.

From an examination of the record and a consideration of the facts in this case, we are satisfied that the entries of the merchandise in question at values less than those found by the appraiser were without any intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

The petition is granted, except as to entry 968497, hereinabove referred to. Judgment will be rendered accordingly.